VENABLE LLP
DOUGLAS C. EMHOFF (Cal. Bar No. 138426)
JEFFREY M. TANZER (Cal. Bar No. 129437)
2049 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 229-9900
Facsimile: (310) 229-9901

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GEMTEK TECHNOLOGY, CO., LTD., <br><br> Plaintiff, <br><br> v. <br><br> 3DSP CORPORATION, <br><br> Defendant. | Case No. **CV09-564 GAF (MLGx)** <br><br> **COMPLAINT FOR BREACH OF CONTRACT, UNJUST ENRICHMENT, PROMISSORY ESTOPPEL, MONEY HAD AND RECEIVED, AND BREACH OF SETTLEMENT AGREEMENT** |

Plaintiff Gemtek Technology, Co., Ltd. ("Gemtek") alleges as follows for its Complaint against Defendant 3DSP Corporation ("3DSP"):

## THE PARTIES

1. Founded in 1991, plaintiff Gemtek, which is incorporated under the laws of Taiwan and has its principal place of business in Hsinchu Industrial Park, Taiwan, is a world-leading provider of wireless broadband solutions, offering a wide range of solutions from residential to business.

2. Defendant 3DSP is a privately financed company that is incorporated under the laws of the State of California and has its principal place of business at 16271

COMPLAINT

::ODMA\PCDOCS\LA1DOCS1\228319\1

Laguna Canyon Road, Irvine, California 92618-3619. 3DSP develops digital signal processing technology used in wireless products. Mr. Kan Lu is 3DSP's co-founder and former Chief Executive Officer.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a). The matter is between diverse parties and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs. The Court has personal jurisdiction over the defendant 3DSP, which is headquartered, and regularly transacts business, within this judicial district. Venue is proper in this district under 28 U.S.C. § 1391(a) and (c).

## ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

4. By this Complaint, Gemtek seeks to recover money that was loaned to 3DSP pursuant to an agreement, and with the understanding and expectation that such amount would be repaid with interest. 3DSP has failed to repay the loan and represents that it does not have the money or assets to repay the loan and interest thereon. In the alternative, Gemtek will seek relief for 3DSP's breach of a settlement agreement by which the parties previously endeavored to resolve their disputes.

5. In 2004, defendant 3DSP approached plaintiff Gemtek and requested monies to help finance 3DSP's operations. Gemtek offered to provide a loan to 3DSP in an "aggregate amount of up to One Million Dollars ($1,000,000)." Gemtek drafted a "Loan Agreement" for that purpose, which was subsequently signed, and each page initialed, by 3DSP's former CEO, Kan Lu. The Loan Agreement, a copy of which is attached hereto as Exhibit "A" and is incorporated by this reference, provided that the 3DSP "shall" deliver to Gemtek a duly executed Loan Note evidencing each amount of the loan. In addition to the Note, the Loan Agreement provided further security in the form of rights to 3DSP products and intellectual property.

6. Following 3DSP's execution of the Loan Agreement, in October 2004, Gemtek wire transferred $300,000 to 3DSP. In a letter to Gemtek dated January 4,

2005, 3DSP CEO Kan Lu "acknowledge[d] receipt of $300,000" as part of the "bridge loan extended to 3DSP Corporation." Mr. Lu's letter stated that "[t]he entire amount of $300,000 was received in our business account at Silicon Valley Bank on October 29, 2004, by wire transfer...." 3DSP failed to provide a Loan Note for the $300,000 provided by Gemtek as required by the Loan Agreement.

7. 3DSP never requested additional funds from Gemtek following the $300,000 provided by Gemtek in October 2004.

8. Both Gemtek and 3DSP expected and understood that 3DSP would repay Gemtek all monies loaned, plus interest, and that the monies provided by Gemtek were not a gift.

9. 3DSP has not repaid any part of the $300,000 provided to it by Gemtek, or any interest thereon. 3DSP has represented to Gemtek that it will not repay that loan or any interest thereon and does not have funds to cover the monies owed.

10. On or about October 27, 2008, Gemtek filed an action in the United States District Court for the Central District of California, in which Gemtek sought to recover damages from 3DSP in connection with monies loaned to 3DSP. *Gemtek Technology, Co., Ltd. v. 3DSP Corporation*, Case No SACV 08-1192-DOC (RNBx) (the "Prior Action"). In November 2008, the parties executed a settlement agreement (the "Settlement Agreement") intended to resolve the Prior Action, which was thereafter voluntarily dismissed by Gemtek. 3DSP has breached the settlement agreement by failing to deliver any of the consideration required thereunder on its part. In this action, Gemtek is seeking, in the alternative, damages arising from 3DSP's breach of the Settlement Agreement, or enforcement of 3DSP's obligations under the Settlement Agreement.

## COUNT ONE

### (Breach of Contract)

11. The allegations contained in paragraphs 1 through 10 are incorporated by this reference as though fully set forth herein.

12. 3DSP and Gemtek entered into an agreement for Gemtek to provide a loan to 3DSP that would be repaid with interest and other security. Gemtek has fulfilled its material obligations pursuant to the agreement, including providing a $300,000 loan to 3DSP.

13. 3DSP has knowingly breached its contract with Gemtek by, among other things, failing to repay the $300,000 provided to 3DSP and failing to execute a Note for the loan.

14. 3DSP has no justification or excuse for its breach of the agreement with Gemtek.

15. As a direct and proximate result of 3DSP's breach, Gemtek has suffered and will continue to suffer damages, including but not limited to the amount of the loan, interest on the loan, and the opportunity cost of the loan and interest thereon.

## COUNT TWO

### (Unjust Enrichment)

16. The allegations contained in paragraphs 1 through 15 are incorporated by this reference as though fully set forth herein.

17. Gemtek has conferred a benefit on 3DSP by providing a loan in the amount of $300,000 with the understanding and reasonable expectation that such amount would be repaid with interest.

18. 3DSP requested the loan from Gemtek and represented that it would repay the loan. 3DSP received the $300,000 loan in October 2004 and has had use of those funds since that time.

19. 3DSP has represented that it will not repay the loan or any interest thereon.

20. If 3DSP is not required to repay the money received from Gemtek plus interest thereon, or transfer to Gemtek assets covering the value of the loan plus interest, 3DSP will be unjustly enriched in those amounts at the direct expense and detriment of Gemtek.

21. Gemtek is entitled to recover the amount of the loan, interest on the loan, and the cost and expense of filing suit to recover the monies owed.

## COUNT THREE

### (Promissory Estoppel)

22. The allegations contained in paragraphs 1 through 21 are incorporated by this reference as though fully set forth herein.

23. 3DSP requested a loan from Gemtek and promised to repay the loan with interest.

24. Gemtek provided a loan in the amount of $300,000 to 3DSP with the understanding, reasonable expectation, and in reliance on 3DSP's promise to repay the loan with interest. 3DSP foresaw that Gemtek would provide the loan in exchange for 3DSP's promise to repay the loan with interest.

25. 3DSP has represented that it will not repay the loan or any interest thereon.

26. Gemtek has been injured as a result of its reliance on 3DSP's promise in the amount of the loan, interest on the loan, opportunity cost of the loan, and the cost and expense of filing suit to recover the monies owed.

## COUNT FOUR

### (Money Had and Received)

27. The allegations contained in paragraphs 1 through 26 are incorporated by this reference as though fully set forth herein.

28. On or about October 29, 2004, 3DSP became indebted to Gemtek in the amount of $300,000 for money lent by Gemtek to 3DSP at its request.

29. No part of this amount has been paid, though demand for payment in full has been made, and there is now due, owing and unpaid from 3DSP to Gemtek the amount of $300,000, with interest on that amount.

## COUNT FIVE

**(Breach of Settlement Agreement)**

30. The allegations contained in paragraphs 1 through 10 are incorporated by this reference as though fully set forth herein.

31. Subsequent to the filing of the Prior Action, Gemtek and 3DSP negotiated a settlement of the claims that were asserted in that action, and executed a written Settlement Agreement in November 2008. A true and correct copy of the Settlement Agreement is attached hereto as Exhibit "B." In the Settlement Agreement, 3DSP agreed that "[t]the total amount due to Gemtek, including the loan, accrued interest, and attorneys' fees and expenses, is approximately $400,000." Based on the execution of the Settlement Agreement, and in the expectation that 3DSP would comply with its obligations thereunder, Gemtek voluntarily dismissed the Prior Action.

32. A material term of the Settlement Agreement was the transfer of 1,600,000 shares in SkyPhy Networks Limited by 3DSP to Gemtek. To date, 3DSP has failed and refused to transfer any shares of SkyPhy Networks Limited to Gemtek.

33. The Settlement Agreement further provides as follows: "Should it prove that 3DSP was not authorized to assign the shares or that 3DSP did not have clear, free and unpledged title to the shares, 3DSP will permit the entry of a default judgment in litigation brought in federal court by Gemtek against 3DSP in an amount of $400,000."

34. Gemtek is informed and believes, and on that basis alleges, that 3DSP was not authorized to assign the shares or that 3DSP did not have clear, free and unpledged title to the shares. Gemtek will seek the entry of a default judgment against 3DSP at an appropriate time, in the amount of $400,000, plus allowable interest.

35. Gemtek has fully performed its obligations under the settlement agreement or has been excused or prevented from performing such obligations by virtue of the conduct of 3DSP.

36. In the alternative to the relief requested in the Counts One through Four herein and under a default judgment, Gemtek is entitled to specific performance of the terms of the Settlement Agreement.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

On Counts One through Four:

A. A monetary judgment for damages, including but not limited to the $300,000 loan amount and interest thereon; and

B. An accounting of 3DSP's assets to cover the loan plus interest.

On Count Five:

C. Judgment in the sum of $400,000, plus allowable interest;

D. In the alternative, specific performance of the Settlement Agreement.

On all Counts:

E. Costs of suit, and attorneys' fees to the extent permitted by contract or statute; and

F. For such other and further relief as this Court may consider just and proper.

Dated: January 23, 2009

VENABLE LLP
DOUGLAS C. EMHOFF
JEFFREY M. TANZER

By _____
Jeffrey M. Tanzer
Attorneys for Plaintiff

LOAN AGREEMENT

THIS LOAN AGREEMENT ("Agreement") is made as October 27th, 2004, by and between 3DSP Corporation, a California corporation ("Borrower") and Gemtek Technology Co., Ltd., a Taiwanese corporation ("Lender").

RECITALS

WHEREAS, Borrower desires to borrow from Lender, and Lender desires to loan to Borrower the aggregate sum of up to One Million Dollars ($ 1,000,000)- in accordance with the terms and conditions of this Agreement (the "Loan");

WHEREAS, the Loan shall be advanced and evidenced by Borrower's convertible promissory note in the principal amount of such Loan and payable to the order of Lender, in substantially the form attached hereto as Exhibit A (each a "Loan Note"); and

NOW, THEREFORE, in consideration of the premises and the mutual covenants and promises of the parties hereto and for other valuable consideration, the receipt of which is hereby acknowledged, the parties hereto agree as follows:

1. Loan and Loan Notes. Subject to the provisions of Section 2 below, Lender shall advance to Borrower an aggregate amount up to One Million Dollars ($ 1000,000) in lawful money of the United States. The first amount of such Loan shall be advanced to Borrower on or before October 28, 2004 (the "Closing Date"). Borrower shall on the Closing Date duly executed and deliver to Lender a Loan Note evidencing each amount of the Loan.

2. Security.
2.1 Borrower shall grants to Lender a perpetual, fully paid-up, irrevocable, transferable license to use, reproduce, modify, debug Borrower's new 802.11a/b/g IC (Integrated Circuit) IPs(Intellectual Properties) including but not limited to layout, netlist, RTL, source codes, technical documents and notes, development tools, firmware, and Windows and Linux drivers, developed by Borrower ("Borrower's IPs") and sell the IC chip or any product related to Borrower's IPs,- when one of the following conditions satisfied :
(1) Borrower becomes insolvent by being unable to pay its debts as they become due;
(2) Borrower enters into bankruptcy receivership, composition, rehabilitation, or liquidation for the purpose of avoiding bankruptcy;
(3) Borrower fails to fulfill its obligations under section 3; or
(4) Borrower breach the Agreement materially.

2.2 Lender will not have the rights to re-spin the IC chip hardware for other applications.

1



EX. A Pg 8

2.3 Borrower agrees to pre-deposit all documentation, code, or tangible or intangible things related to IPs which enables Lender to use Borrower's IPs ("Documentation") to an independent technology escrow agent. Under Section 2.1, Lender is entitled to receive the Documentation from the escrow agent without any further notice to Borrower.

3. **Repayment of Loan.** In accordance with the terms and conditions of the Loan Note, Lender will have the following options upon maturity of the Loan:

3.1 Borrower repays in cash to Lender in full the loan amount including principle and interest.

3.2 Lender will have the preferential rights to convert the repayable Loan amount including principle and interest into Company's Preferred Stock at the closing of the Next Financing (as such term is defined in each Loan Note) at the applicable Conversion Price (as such term is defined in each Loan Note). Where the Loan Notes are so converted, Lender shall become a party to such stock purchase agreement, investors' rights agreement, co-sale agreement, voting agreement, registration rights agreement and/or such other agreements as are entered into by the investors in the Next Financing.

4. **Notices.** Each notice, communication and delivery under this Agreement: (a) shall be made in writing signed by the party giving it; (b) shall specify the section of this Agreement pursuant to which given; (c) shall either be delivered in person or by telecopier, a nationally recognized next business day courier service or Express Mail; (d) unless delivered in person, shall be given to the address specified below; (e) shall be deemed to be given (i) if delivered in person, on the date delivered, (ii) if sent by telecopier, on the date of telephonic confirmation of receipt, (iii) if sent within the United States by a nationally recognized next business day courier service with all costs paid, on the next business day after it is delivered to such courier, or (iv) if sent by Express Mail (with postage and other fees paid), on the next business day after it is mailed. Such notice shall not be effective unless copies are provided contemporaneously as specified below, but neither the manner nor the time of giving notice to those to whom copies are to be given (which need not be the same as the addressee) shall control the date notice is given or received. The addresses and requirements for copies are as follows:

If to Borrower:

3DSP Corporation
16271 Laguna Canyon Road, Irvine, CA 92618
Telephone No. (949) 435-0600
Facsimile (949) 435-0700
Attention:

2

If to Lender:

Gemtek Technology Co., Ltd.
No. 1, Jen Ai Rd., Hsinchu Industrial Park, Hukou, Hsinchu, Taiwan, R. O. C.
Telephone No. 886-3-5985535
Facsimile: 886-3-5972103

5. Binding Effect. This Agreement shall be binding upon and inure to the benefit of each party hereto and their respective successors and assigns.

6. No waiver. Any waiver, consent or approval by any party hereto must be in writing and shall be effective only to the extent set forth in such writing. No waiver of any breach or default shall be deemed a waiver of any later breach or default of the same or any other provision of this Agreement. No failure or delay on the part of party hereto in exercising any power, right, or privilege under this Agreement shall operate as a waiver thereof, and no single or partial exercise of any such power, right, or privilege shall preclude any further exercise thereof or the exercise of any other power, right or privilege.

7. Unenforceable Provisions. Any provision of this Agreement that is prohibited or unenforceable in any jurisdiction, shall be so only as to such jurisdiction and only to the extent of such prohibition or unenforceability, but all the remaining provisions of this Agreement shall remain valid and enforceable. The provision in question shall be deemed to be replaced with a valid and enforceable provision most closely reflecting the intent and urpose of the original provision.

8. Governing Law. This Agreement shall be governed by and construed in accordance with the laws of the State of California, without giving effect to the conflicts of law principles thereof.

9. Counterparts. This Agreement may be executed by each party upon a separate copy, and in such case one counterpart of this Agreement shall consist of enough of such copies to reflect the signatures of all of the parties. This Agreement may be executed in two or more counterparts, each of which shall be an original, and each of which shall constitute one and the same agreement. Any party may deliver an executed copy of this Agreement and of any documents contemplated hereby by facsimile transmission to another party and such delivery shall have the same force and effect as any other delivery of a manually signed copy of this Agreement or of such other documents.

10. Entire Agreement; Amendment. This Agreement and the Exhibits hereto are intended by the parties as the final expression of their agreement and therefore contain the entire agreement between the parties and supersede all prior understandings or agreements concerning the subject matter hereof and thereof. Any term or provision of this Agreement may be amended only

3

by a writing signed by all parties to this Agreement.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date set forth above.

| BORROWER: | LENDER: |
|---|---|
| 3DSP CORPORATION | GEMTEK TECHNOLOGY CO., LTD.. |
| By: *[signature]* | By: _____ |
| Name: Kan Lu | Name: _____ |
| Title: CEO | Title: _____ |

4

## SETTLEMENT AGREEMENT

This Settlement Agreement dated November 2008 is between Gemtek Technology Co. Ltd. ("Gemtek") and 3DSP Corporation ("3DSP"), collectively referred to herein as "the Parties."

WHEREAS Clauses:

1. In 2004 Gemtek and 3DSP entered into a Loan Agreement in which Gemtek offered to provide a loan to 3DSP in an "aggregate amount of up to One Million Dollars ($1,000,000)."

2. Pursuant to that Loan Agreement, Gemtek wire transferred $300,000 USD to 3DSP. In a letter to Gemtek dated January 4, 2005, 3DSP "acknowledge[d] receipt of $300,000" as part of the "bridge loan extended to 3DSP Corporation."

3. Gemtek has requested repayment of the loan and filed, but did not serve, a lawsuit in the U.S. District Court for the Central District of California to recover monies owed. The parties have agreed to this Settlement Agreement to satisfy outstanding obligations with respect to the loan by Gemtek to 3DSP.

4. Since the provision of the $300,000 loan to 3DSP, the loaned amount has accrued interest and Gemtek has reasonably incurred attorneys' fees in connection with its efforts to obtain payment of monies due to it by 3DSP. The total amount due to Gemtek, including the loan, accrued interest, and attorneys' fees and expenses, is approximately $400,000.



5.  Gemtek, 3DSP and other parties have formed a joint venture in China known as SkyPhy Networks. 3DSP, either on its own or through an affiliated company, Sun Elite, owns 2,963,333 shares, representing 16.67% of SkyPhy Networks Limited.

THEREFORE, the parties agree as follows:

1.  3DSP will immediately assign to Gemtek 1,600,000 unsecured shares in SkyPhy Networks Limited, a Cayman Islands company. This assignment will extinguish the loan, interest, and fees owed to Gemtek. This payment would extinguish any obligations owed by Gemtek to 3DSP or 3DSP to Gemtek under the 2004 Bridge Loan Agreement and any subsequent oral or written amendments thereto.

2.  Gemtek will, on demand made by 3DSP, sell back to 3DSP 800,000 of the SkyPhy Networks Limited unsecured shares for the sum of $200,000. This demand by 3DSP must be made on July 31, 2009. If no demand is made on July 31, 2009, Gemtek will be under no obligation to sell back the shares to 3DSP.

3.  3DSP represents that the 1,600,000 shares assigned to Gemtek have not previously been pledged to any other party and that 3DSP has clear title to those shares and authority to convey them.

4.  Should it prove that 3DSP was not authorized to assign the shares or that 3DSP did not have clear, free and unpledged title to the shares, 3DSP will permit the entry of a default judgment in litigation brought in federal court by Gemtek against 3DSP in an amount of $400,000.

5. 3DSP will arrange for the delivery of the unsecured shares to Gemtek no later than November 12, 2008.

6. STANDARD Terms:

A. <u>Mutual Release.</u>  Upon execution of this Settlement Agreement, in exchange for the consideration set forth herein, the sufficiency of which is hereby acknowledged, the Parties, for themselves, their representatives, agents, officers, directors, employees, attorneys, parents, subsidiaries, affiliates, predecessors, heirs, successors, and assigns hereby mutually release and forever discharge each other, and their respective officers, agents, directors, employees, attorneys, parents, subsidiaries, and affiliates, predecessors, heirs, successors, and assigns from any and all claims, demands, causes of action, damages, actions, losses, costs, expenses, compensation and other damages and liability of any kind or nature whatsoever, direct or indirect, whether or not now known, suspected or claimed, which the Parties asserted, or could have asserted against one another arising out of the loan agreement.

B. <u>Complete Agreement.</u>  The Parties declare that the terms of this Settlement Agreement have been completely read, are fully understood, and are voluntarily accepted. The Parties agree that they have not executed this Settlement Agreement in reliance upon any promise, representation, or warranty not contained or referred to herein. All prior discussions, negotiations, and writings have been and are merged and integrated into, and are superseded by, this Settlement Agreement.

C. <u>Choice of Law and Forum.</u>  This Settlement Agreement shall in all respects be interpreted, enforced, and governed by and under the laws of the state of California without

regard to conflicts of law provisions. Reasonable attorneys' fees and costs shall be awarded to the prevailing party in any lawsuit to enforce this Settlement Agreement.

D. <u>Assumption of the Risk of Differences in Facts or Subsequent Change in Law</u>. Each Party hereto acknowledges that if the facts with respect to which this Settlement Agreement is executed are found hereafter to be different from the facts now believed by them to be true, they expressly accept and assume the risk of such possible difference in facts and agree that this Settlement Agreement will be, and will remain, effective notwithstanding such difference in facts. Similarly, each Party hereby expressly accepts and assumes the risk that the law may change after execution of this Settlement Agreement and agrees that this Settlement Agreement will be, and will remain, effective notwithstanding any such change in law.

E. <u>Preparation of Settlement Agreement; Construction</u>. The Settlement Agreement shall be deemed as prepared jointly by the Parties hereto. Any ambiguity or uncertainty existing herein shall not be interpreted or construed against any party hereto by virtue of who may have drafted such provision.

F. <u>Authority of Parties</u>. Gemtek and 3DSP represent and warrant to one another that they have the full right and exclusive authority to enter into and execute this Settlement Agreement.

G. <u>Claims Not Assigned</u>. Gemtek and 3DSP each represent and warrant that they have not sold, assigned, transferred, conveyed, or otherwise disposed of any claim, demand, or cause of action relating to any matter released, discharged, or waived pursuant to this Settlement Agreement.

H.  <u>Binding on Successors</u>.  This Settlement Agreement shall be binding upon and inure to the benefit of all successors and assigns of Gemtek and 3DSP.

I.  <u>Amendment to Settlement Agreement</u>.  This Settlement Agreement may not be altered, amended, modified or otherwise changed in any respect or particular whatsoever except by a writing executed by an authorized representative of each Party hereto.

J.  <u>Copies</u>.  Photocopies or facsimile copies of signatory pages, by any or all of the Parties hereto, are fully binding and effective for purposes of executing this Settlement Agreement.

K.  <u>Counterparts</u>.  This Settlement Agreement may be executed in counterparts and as so executed shall constitute one agreement and shall be binding upon all Parties hereto notwithstanding that all signatory parties do not appear on the same page.

L.  <u>Severability</u>.  Each provision of this Settlement Agreement shall be considered severable, and if for any reason any provision is deemed to be invalid or contrary to any existing or future law, ordinance, regulation or covenant, all other provisions shall remain in effect.

M.  <u>Denial of Liability</u>.  This Settlement Agreement is made without any admission of wrongdoing or liability by any Party hereto.  Any and all alleged wrongdoing or liability by any Party is expressly denied.

In witness hereof, the Parties have executed this Settlement Agreement to be effective upon execution by the Parties.

GEMTEK TECHNOLOGY CO. LTD.

Date: _NOV. 26, 2008_   By: _____

Title: ____CEO____

3DSP CORPORATION

Date: _11/17/2008_   By: _____

Title: ____President____